Bockes, J.
This is an appeal by the defendant from a judgment directed by a referee for $22,413.91, with costs of suits—in all $23,408.03, in favor of the plaintiff.
The action was brought upon two promissory notes made by the defendant and Ira dagger, one dated October 16, 1815, for $22,500; the other dated December 14, 1815, for $13,500; both payable to the plaintiff on demand, with interest. The notes, as alleged in the complaint, had been reduced by payment to the sum of $20,550.60, March 21, 1884, for which sum, with interest from this date, judgment was demanded. The notes were in form joint and several, and Scott was alone sued.
Each note contained a declaration of a deposit as collateral security for its payment; that of October sixteenth, of $25,000, par value, of the mortgage bonds of the dagger Iron Company; and that of December fourteenth, of $15,000, par value, of like bonds, with liberty to sell the same as therein provided.
The principal grounds of defence were: first, that the notes were without consideration; and secondly, that the plaintiff had accepted other notes in payment, or as collateral, which were not due at the time of the commencement of the action, and therefore it was prematurely brought. The referee found in favor of the plaintiff on all the material and controlling issues; and as we conclude, his findings must be accepted as the truth of the case.
*769 First, then, as to the consideration of the notes: It seems that until a short time before the notes were made, dagger, the co-maker with the defendant, had been the president of the dagger Iron Company, and the defendant was then and thereafter its vice-president; that the comfany was then indebted to the plaintiff in about the sum of 60,000, upon notes made by the company for its accommodation, on which notes dagger and the defendant were respectively liable as endorsers, and that the notes in suit were made to reduce, or rather as a change of or substitute for such indebtedness, to the extent and amount of such new notes, with dagger and the defendant as makers. If the notes in suit were made and delivered to carry out an arrangement having this change or substitution of indebtedness in view and in consummation of it, they were unquestionably on good consideration. That they were so made and delivered the referee has found on the evidence, and, as we think, he has so found in accordance with the preponderance of proof; indeed, in accordance, if credited, with the direct and positive proof given on the part of the plaintiff. We may start with the request and agreement, in writing, signed by the defendant and dagger, and delivered to the plaintiff, as follows:
We hereby request the Albany County Bank of Albany to subscribe for $25,000 of the bonds of the dagger Iron Company, secured by the third mortgage of said company on their furnace property, payable at ninety cents on the dollar in the paper of said company, indorsed by us and discounted by said bank, and in consideration thereof we hereby agree to guarantee the payment of said indebtedness to said bank by our notes, the said bonds to be held by said bank as collateral thereto.
IBA dAGGER, W. B. SCOTT.
Albany, October 16, 1875.
This paper bears the same date with the first note, which, as is manifest, was made, anticipatory of the subscription for the bonds, to answer the “guarantee” agreed thereby to be given. The subscription for the bonds was made as requested; and on or about the 15th of December following, the bonds in the meantime having been obtained, the note was discounted or accepted by the plaintiff, and the bonds delivered as collateral security as provided for in the request and agreement above set out and as stated also in the body of the note, and the indebtedness of the dagger Iron Company, on which the defendant and dagger were liable, *770 was changed to an indebtedness against them alone, to the extent and amount of the note, with the latter two as makers.
Then as respects the note for $13,500 of December 34th: The proof is to the effect that this note was also made by the defendant and dagger, and accepted by the plaintiff, with the bonds of the company as collateral security for its payment, in reduction or change of their liability to the plaintiff on the paper of the company. The future action of the defendant goes to show that the notes had their origin on a state of facts substantially as above briefly stated. Both the defendant and dagger repeatedly during the course of several years prior to the bringing of the action, recognized the notes as valid and binding on them by writings over their own signatures; made changes of securities held as collateral, and gave additional collateral security for their payment and also made payment thereon; which recognition is quite inconsistent with the alleged defense that the notes were without consideration and invalid against them. If the notes were made, as is urged by the defendant, to evidence an indebtedness to the Iron Company, which had already been paid and canceled by a purchase by the plaintiff of its bonds, and the bonds described in the notes as collateral thereto were actually the property of the plaintiff at the time the notes were accepted or discounted, then of course there was no such consideration for the notes as would bind the defendant and dagger to their payment. But the proof fails to sustain this theory. The written evidence is against it by all fair intendment; and the oral proof in its preponderating influence does not. contradict and overcome such intendment, but, as we think, decidedly supports it. If the oral testimony submitted on the part of the plaintiff—especially that given by Mr. Templeton, plaintiff’s cashier—is to be credited and considered in connection with the written evidence, with which it seems entirely consistent, the defense of want of consideration for the notes is absolutely groundless. Without here attempting a criticism of the testimony submitted on the part of the defendant in detail, or to show its improbability where it is in conflict with that submitted on the part of the plaintiff, both written and oral, it must suffice to say that the weight of evidence on every material matter in dispute is with the plaintiff on this branch of the case.
It should be added that the testimony of Mr. Templeton, plaintiff’s cashier, has been assailed as contradictory, inconsistent with itself and inconsistent with the written evidence; and also that it is contradicted by other proof— hence that it is unreliable to an .extent, rendering it value *771 less. His testimony has been carefully and skillfully dissected and collated by the defendant’s counsel; but on our examination of the proof, it fails, as we think, to support such conclusion. He was closely and critically cross-examined, and in some instances discrepancies are pointed out in his testimony, principally, however, as to matters of secondary importance, which might well occur without an impairment of its general scope. In so far as we are able to see, the line of proof given by him on the material points, considered under all the proof submitted outside of it, afforded fair matter for consideration by the referee, in his effort to determine the truth of the case; so the referee had the right to give it force in making up his findings of fact, and may well have done so in determining the question as to the preponderance of proof on subjects as to which there was a conflict of evidence; and as the case is here presented, this court on appeal cannot properly hold that in giving the evidence even controlling force there was error.
It is next urged that the action was prematurely brought, inasmuch as some of the collaterals pledged for the payment of the notes were not yet due when the suit was commenced. But this objection is answered by the fact that it does not appear that there was, at any time when collaterals were given, any agreement to defer or suspend plaintiff’s right to proceed on the principal indebtedness. It was laid down in Cary v. White (52 N. Y., 138) that the mere taking of collateral security on time was not per se, and in the absence of any agreement beyond it, an extension of time for the payment of the original debt; and this case was cited with approval in the recent one of Linderman v. Farquharson (101 N. Y., 438). Now, in no instance where collaterals were delivered to and accepted by the plaintiff, was there any agreement that its right to proceed on the original indebtedness should be suspended; but in every such instance the securities pledged were expressly as collateral.
On the trial, and after the plaintiff had rested the case, the defendant moved that the plaintiff be instructed to furnish the items of its claims and of payments made thereon. The motion was denied on the ground of want of power in the referee so to direct. This ruling is urged as ground of error. Error cannot be predicated on this ruling, if for no other reasons than these, that it is plain the request was without merit; and also that as the case was then and subsequently made on the proof, the refusal was harmless to the defendant.
There were no rulings on questions of evidence during *772 the trial, as we think, injurious to the defendant’s rights. Judgment affirmed, with costs.
Learned, P. J., and Landon, J., concur.